```
                   UNITED STATES DISTRICT COURT

                  CENTRAL DISTRICT OF CALIFORNIA

         HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

ADAM GHADIRI,                     )
                                  )
                                  )
                                  )
                 Plaintiff,       )
                                  )
                                  )
                                  )
          Vs.                     )   No. SACV18-01869-AG
                                  )
                                  )
                                  )
CARPET AND LINOLEUM CITY,         )
                                  )
                                  )
                                  )
                 Defendant.       )
                                  )
_____  )



              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                       MOTION HEARING

                   SANTA ANA, CALIFORNIA

                  MONDAY, NOVEMBER 4, 2019




            MIRIAM V. BAIRD, CSR 11893, CCRA
         OFFICIAL U.S. DISTRICT COURT REPORTER
         411 WEST FOURTH STREET, SUITE 1-053
               SANTA ANA, CALIFORNIA 92701
                     MVB11893@aol.com
```

|     |                                                                |                                                                                                                    |
| --- | -------------------------------------------------------------- | ------------------------------------------------------------------------------------------------------------------ |
| 1   | **A P P E A R A N C E S**                                      |                                                                                                                    |
| 3   | **IN BEHALF OF THE PLAINTIFF, ADAM GHADIRI:**                  | Dennis Jay Price, II<br>Center For Disability Access<br>8033 Linda Vista Road Suite 200<br>San Diego, CA 92111     |
| 10  | **IN BEHALF OF THE DEFENDANT, CARPET AND LINOLEUM CITY:**      | ARA SAHELIAN<br>SAHELIAN LAW OFFICES<br>23046 AVENUE DE LA CARLOTA SUITE 600<br>LAGUNA HILLS, CA 92653             |

```
 1      SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 4, 2019; 11:14 A.M.
 2                                 ---
 3
 4           THE CLERK:  SACV18-01869-AG, Adam Ghadiri v. Carpet
 5   and Linoleum City, et al.
 6           THE COURT:  The confusion is it looks like you
 7   pulled the previous file in anticipation of what we just
 8   decided.  So now we are on to number 14.
 9           All right.  Appearances, please.
10           MR. SAHELIAN:  Good morning, Your Honor.
11           Ara Sahelian for Carpet and Linoleum.
12           MR. PRICE:  Good morning, Your Honor.
13           Dennis Price for the plaintiff Adam Ghadiri.
14           THE COURT:  Okay.  So let me say just a few initial
15   statements.  88 cases have come to take up, gosh, maybe
16   20 percent or more of the calendars of District Court judges
17   across the Central District.  I must say some of them are
18   reacting pretty negatively to them.  My view is Congress says
19   this is a right.  I'm here to enforce whatever Congress says.
20           I also think Congress intends the plaintiff to have
21   some incentive in fee awards.  I understand all of that, but
22   I do think there are limits.  I'll note in the first
23   paragraph we say the defendants are owners of a modest retail
24   carpet store, a modest retail carpet store.  I -- I take
25   seriously the effect on such stores.
```

1         Now, I make some -- I -- we previously have been
2    here before with the $595 an hour rate.  In previous cases, I
3    have attempted to just say, gosh, when you're aiming for a
4    $4,000 recovery, 595 followed by three or four other people
5    at 450 is just too rich.  I attempted to say that discretely
6    in previous cases.  There was fulsome argument about the
7    wonderful qualifications of the attorney involved, et cetera,
8    et cetera.  There was, I think -- perhaps, it was with you,
9    Mr. Price, the notion that I'm not allowed to say eight
10   people on an ADA case are too many.  I've said what I need
11   to -- nine people on an ADA case are too many.  I've said
12   what I said about that.  I previously tried to say it
13   discretely because I didn't want to necessarily bar you in
14   other cases, but we now have two more.
15        I -- I know that when and if I approve 595, I am
16   going to get cited as the guy who approved 595.  I don't want
17   to necessarily build on that.
18        So here we are.  What would either side like to
19   say?
20        MR. PRICE:  Yes, Your Honor.  If I may?
21        THE COURT:  Yes.
22        MR. PRICE:  I think I am the one on the brunt end
23   on this.  I was the one who argued on the Karaki (phonetic)
24   case.  We did not go further with that because that matter
25   got resolved.

```
 1            THE COURT:  Appeal me on it.  Let me say.  You'll
 2   forgive me if I say, go ahead and make my day.  If you want
 3   to appeal the fact that nine attorneys with -- with the
 4   highest rate 595, way more than half of them over 450 and the
 5   lowest 400 is something I can't comment on in determining the
 6   reasonableness of the ruling, fine.  I think I find case
 7   authority contrary to your authority.  I mean, I understand
 8   your authority.  I think I got other authority that is
 9   contrary to it.  Perhaps, you need to clarify it since it's
10   now come up three times.  You keep telling me we've got nine
11   people from 595 to 400.  We've got 30,000 plus recovery for a
12   $4,000 claim.  Appeal it.  Honestly.  It's not meant to be a
13   threat.  Appeal it.  Elevate your case.  We'll see.  I
14   don't -- I don't -- we'll see.  I'll rely on the case law we
15   have cited.  I invite you to appeal.  Go ahead.
16            MR. PRICE:  I want to say -- that's not exactly
17   where I was going, but we'll cross that bridge if we have to.
18            THE COURT:  Uh-huh.  No threat.  If you want to
19   appeal me and if I misinterpreted the law, let me know.
20            MR. PRICE:  I love Pasadena.  That's fine.
21            The one thing I do want to address is the issue of
22   too many attorneys.
23            THE COURT:  Yeah.
24            MR. PRICE:  We have actually changed our pleading
25   since the Karaki hearing.  I believe this matter had been
```

```
 1    submitted prior to the hearing in that matter.  We have made
 2    some modifications.  Frankly, the reason we staff our firm
 3    the way we staff our firms is we have tried a lot of
 4    different approaches.  We have found in our judgment that
 5    this is the most efficient way to staff a firm.  We don't
 6    have multiple people doing the same task.  We do use what has
 7    sometimes derisively been called as an assembly line
 8    approach.  We don't see that as something that is worthy of
 9    derision.  We bring in relatively young attorneys --
10              THE COURT:  At $500 an hour?  $450 an hour?
11              MR. PRICE:  They get there.  These are attorneys
12    who have been at their particular aspect of the case for
13    quite sometime.
14              THE COURT:  So you have relatively young attorneys
15    charging $400 an hour in ADA case?
16              MR. PRICE:  I want to clarify, Your Honor.  I'm
17    saying these attorneys who are originally brought into our
18    firm fairly new, not really up to speed on the ADA, but now
19    they are.  They have done the same type of litigation in some
20    cases hundreds if not thousands of times -- in my case,
21    despite the fact that I haven't been a member of the Bar for
22    as long as some others might be.  You're not going to find
23    anyone who knows the area of the law that I'm doing better
24    than me.
25              The same can be said for almost every other person
```

1   on this list.  We have made adjustments based on their actual
2   expertise.  When it comes to doing discovery, the attorneys
3   that are doing that aspect of the discovery, they're doing it
4   with a level of expertise effectively unparalleled.  When
5   they get to an area of case that they're not intimately
6   familiar with, it is handed to someone intimately familiar
7   with it.  We never bill for any time two attorneys are doing
8   the same task.  If something is drafted and then reviewed by
9   someone else, we never draft [sic] for someone reviewing that
10  task.  We bill for the person drafted it.  So you're actually
11  getting the cheaper attorney getting billed for that.
12          We're never billing for the hand-off or for the
13  refamiliarization of the file or anything of that sort.
14  We're only billing for tasks done and the amount time done on
15  those tasks.  We believe the amount of time spent on each of
16  those tasks -- if you look at the actual individual without
17  any preconception as to how many attorneys -- without any
18  regard to the number of attorneys that are staffing it as to
19  that somehow being inherently negative, you'll see they are
20  doing these in an efficient time period.  If the entire file
21  had been billed to Dennis Price, we wouldn't be questioning
22  the amount of time that was spent on an individual task.  We
23  wouldn't be looking at it that way.
24          So when the only rationale that is being used is
25  that there are too many attorneys, but we're not looking at

1  the amount of hours they're spending on the tasks as being
2  unreasonable, I think that's in violation of Moreno vs. City
3  of Sacramento.  I'm not saying that there not circumstances
4  where a case can be overstaffed.
5         Here, that's not happening.  Each task is
6  individually being done.  Each task is being done with a
7  reasonable amount of fees.
8         THE COURT:  Slow down a bit.
9         MR. PRICE:  It seems like the complaint is that it
10 is being done non-traditionally.  I don't think that kind of
11 judgment call is appropriate without a justification for why
12 too many is frankly too many.
13        THE COURT:  Well, let me start with what the
14 tentative says.  $2,000 reviewing the file.  Okay.  Is there
15 $2,000 reviewing the file?
16        MR. PRICE:  Yes.
17        THE COURT:  Is it a fairly straightforward ADA case
18 where the maximum damages statutorily are $4,000.  You're
19 going to spend $2,000.  Forgive me for assuming that maybe
20 that's partly the result of the multiple attorneys involved
21 in this case.  Maybe not.  I was in a firm for multiple,
22 multiple decades.  And I just don't know how attorney number
23 nine can come on board and automatically know all that
24 attorney number nine needs to know that hasn't already been
25 learned by attorneys 1, 2, 3, 4, 5, 6, 7, and 8.

1  MR. PRICE: I understand the question, Your Honor,
2  but I think it's frankly an inappropriate question. I think
3  the tasks have to speak for themselves if the amount of time
4  that has been taken has been reasonable.
5  Now, you draw attention to one particular aspect.
6  This was not a usual case. Your Honor has seen a lot of
7  cases from our firm. We very, very seldom substitute in with
8  a plaintiff who has been representing himself in pro per.
9  That was the context here. A case that had been litigated
10  without us. We had to receive a file from a
11  non-sophisticated plaintiff. We had to review it and make
12  sure the case would be viable. That did take an amount of
13  time. Unfortunately, he's not an attorney. He will probably
14  never be an attorney. So we had to get familiarized. You'll
15  never see that billing line item on another case from us most
16  likely because we just don't substitute in on cases. This
17  was the very first case we'd done with this plaintiff. I
18  don't think it was inappropriate. Unusual, yes.
19  THE COURT: I hope you realize there is a societal
20  and even a judicial concern that modest retail carpet stores
21  should not have to pay $36,000 in a case where your recovery
22  is $4,000.
23  Now, you may choose to respond -- understand that,
24  respect that, deal with that, or you may not. I'm telling
25  you there's concern. I meant what I said. You need to be

1     incentivized.  You need to be efficient yet incentivized.

2                 Again, I invite you to take it to lovely Pasadena.

3     I will make the record clear here that can perhaps be cited

4     by the appellee in dealing with an ADA case, I am taking into

5     account the fact that this case with a $4,000 recovery is now

6     seeking an attorney fee award based on the work of nine

7     lawyers ranging from 595 to the lowest amount of 400.  Appeal

8     me and reverse me.  Let the Ninth Circuit say I'm not allowed

9     to look at the number of lawyers, and I should accept your

10    statement that you have done everything as efficiently as

11    possible.  We'll see.  It's fine.  Perhaps, I'm wrong.

12                I am just saying that in my application of the will

13    of the Congress and my need to give you proper incentive and

14    respect what Congress wants to happen with this statute, I am

15    just not comfortable with nine attorneys lowest rate of $400

16    working on this case.  I'm not.

17                MR. PRICE:  I understand that.  If I just make one

18    more point.  I do think there's another incentive that does

19    not get discussed sometimes when focusing on the plaintiff's

20    side of these cases.  We frequently litigate these cases in

21    this Court.

22                THE COURT:  By the way, I understand the injunction

23    too, if that's what you're about to say.  The injunctive part

24    is extremely important.  The injunctive part is Congress --

25    well, I'm not looking at Congressional intent.  Sure.

1    Injunction.  I get that.  I should have mentioned injunction
2    as well as the 4,000.  It's possible the injunction is more
3    valuable to society than the 4,000, or -- I'll even go
4    further.  These are all arguments on your behalf.  The threat
5    of injunction, the threat of 4,000, and the threat of 36,000
6    are more important to encourage self-policing.  I understand
7    all that.  I really do.  I just think there's too many
8    attorneys charging too much on this case.
9              MR. PRICE:  That's fair.  That was part of what I
10   intended to say.  I think there's another counter incentive
11   in these cases that needs to be taken into account.  That's
12   the -- if attorneys are not awarded in full for the time that
13   they spend on these cases, there is a lot of incentive on
14   behalf of the defense bar to litigate them when they know
15   they're not going to have to pay market rates for the amount
16   of work that gets done on the case.  These cases should
17   settle early.  They do very frequently settle early.  There
18   are some attorneys who are very aware that some members of
19   the bench will not award full attorney's fees while they will
20   still get paid in full.  They're not using the tools that
21   will enable these cases to settle early.  It's noteworthy.
22   There's no Rule 68 that was in this case.  Those are very
23   powerful tools.  As Your Honor knows, we very frequently
24   agree to them.  That results in much more modest awards and
25   injunctive relief.  That is judicially enforceable.  That

1    didn't happen here.

2             It's unfortunate.  As you know, there are a lot of
3    small businesses who do end up burdened by the awards.  What
4    is the alternative?  This is the only enforcement mechanism.
5    We can't just dismiss the case because the attorneys' fees
6    got too high.  We have to vindicate our client's rights.  We
7    did.  We got everything we were entitled to.  We attempted to
8    defend a meritless appeal that was ultimately dismissed by
9    the defendant in this case.  We're entitled to seek fees for
10   that.  I -- I understand that Your Honor has decided that
11   that has come to a total of $15,000 as reasonable.  I don't
12   think that is applying either the incentives or the law.
13   That's all I would say.

14            I understand the rationale that Your Honor has put
15   in the tentative.  As I mentioned in the previous case, it's
16   appreciated.  It's thorough.  Frankly, I don't really even --
17   I question the legal authority to require me to cite a
18   non-binding decision, but whatever.  It's not that big of a
19   deal.  I'm not unhappy with it.  If this gets appealed, I
20   probably have to cite it.  I do question the -- I guess, the
21   requirement.

22            THE COURT:  Okay.  Mr. Price, good discussion.  I
23   appreciate your good faith and what you've stated here.
24   Based on that, I'm going to take out that line page 4 of 6.
25   Plaintiff's counsel is ordered to cite this decision.  I'm

1  going to take out that line just because I can see you're
2  operating in good faith.  We have a different view of how to
3  run these cases.  We'll take out that line, and you can seek
4  vindication of your view.  Be careful what you seek.  There's
5  rumblings out there that this isn't the way to go.
6          MR. PRICE:  I'm named counsel on every single case
7  in the Central District.  I'm definitely seeing all of that.
8  Every single ADA case from our firm.  It's troubling.  It is
9  what it is.
10         THE COURT:  I can remember KFI, 17200, nail shops,
11 dirty water.  Give me a couple of thousand, and I'll go away.
12 I don't know if you remember that.
13         MR. PRICE:  I'm aware of them.  I don't remember --
14         THE COURT:  I don't want that to happen to this
15 Congressional mandate.  I don't want that to happen.  I
16 always used to say about those lawyers they're just applying
17 17200.  Change 17200.  They did.  Let's just be careful here.
18 Honestly, appeal me.  I'd be happy to have clarification from
19 the Ninth.  With all of that, we'll turn to defense counsel.
20         MR. SAHELIAN:  Your Honor, I -- I would be -- it
21 would be unwise for me to make any comments other than your
22 tentative ruling is on point.
23         I've litigated close to -- I would have to say 30,
24 40, maybe 50 cases.  I haven't counted with Mr. Price's firm.
25 It is troubling.  The way I describe the way they bill is if

1    you are traveling from San Diego to Santa Ana, you would have
2    three ways to go.  You could walk, you could take a private
3    jet, or you could drive.  They seem to opt for the private
4    jet.
5              There are ways to run a litigation practice and do
6    it efficiently.  Unfortunately, there seems to be no
7    incentive to run these cases efficiently from their end.
8              Personally, if I were asked to go in and reorganize
9    their offices, I would make sure it would -- it could run a
10   lot more efficiently than it does today.  They do provide a
11   service on certain case.  Unfortunately, on some cases that
12   are brought, it's coercion is what results.  I'll stop there
13   so I -- I have other opinions, which I will reserve to
14   myself.
15             THE COURT:  All right.  Sir, well stated.  May I
16   say that though I've stricken that line, that doesn't mean
17   you can't cite the case.
18             Would you mind if I also say, it appears you have a
19   disability too?  So your words have some power.
20             MR. SAHELIAN:  I do, your Honor.  I'm probably one
21   of the last polio cases you will see.  I've -- I contracted
22   polio at the age of six months.  I walked on crutches from
23   the age of six until last 15 years when I started using a
24   wheelchair because it got to be too difficult.  I remember
25   when you couldn't get into a restaurant because there were

1  steps or so on and so forth.  When you get to a point when
2  there's a lawsuit filed because the coat hook in the men's
3  rest room is a few inches too high, and it happens to be
4  summer time, and the demand for that coat hook is $14,000
5  take it or leave it, and we will go and try this case all the
6  way down and give you $100,000 attorney fee, then we have
7  gone completely crazy.
8             Your Honor, I do have a case where the demand is
9  $15,000 for a coat hook.  Here's the -- here's a funny part
10 of it.  The coat hook was at the right height.  A young boy
11 poked himself in the eye because it was at the lower.  The
12 manager not knowing of the ADA rules raised it, and here we
13 are.  We have a lawsuit.
14            THE COURT:  All right.  Any response?
15            MR. PRICE:  I want to say that none of that is
16 applicable to this case.  I don't actually know the case he's
17 speaking about.  I would hope that's not taken into
18 consideration --
19            THE COURT:  Absolutely not.
20            MR. PRICE:  -- when Your Honor looks at this order
21 again.
22            THE COURT:  I just want to find the right balance.
23 Mr. Price, I'm very impressed with your argument and your
24 rationale and your approach and your conviction that your
25 firm is doing this as efficiently as possible.

```
 1              Mr. Sahelian, I totally respect your good faith.
 2   Both sides have important issues to -- to protect and defend
 3   here.  I'll make -- I'll remove that one line.  We'll go
 4   forward.
 5              MR. SAHELIAN:  Your Honor, if I may, I did bring my
 6   client with me because I wanted him to hear what you had to
 7   say today.
 8              THE COURT:  Okay.
 9              MR. SAHELIAN:  He does run a small carpet shop.
10              THE COURT:  Yeah.
11              MR. SAHELIAN:  It's very difficult to make a profit
12   nowadays.
13              THE COURT:  Well, by the way, it was one line in
14   the opening paragraph.  I'm not sure that is a factor under
15   the law in determining fees.
16              MR. PRICE:  It's actually legally not.  The Lopez
17   versus Castillo apartments said it was inappropriate to
18   consider.  I don't think -- I'm unclear from your order if
19   you actually did consider it.  You may clarify that if you
20   choose.
21              THE COURT:  Well stated.  Gosh, you're earning your
22   450.  That's all I can say.  Thank you both.
23              MR. PRICE:  One clarification, Your Honor.  Will
24   this tentative be the rule.
25              THE COURT:  It's under submission.  I'll look it
```

1 over. For sure, I'll take out that line, because you
2 impressed me totally with your bonafides. Now if you bring
3 it again with nine people -- we'll see what happens when you
4 bring it again.
5     MR. PRICE: The motion will look a little
6 different. I'll say that, Your Honor.
7     THE COURT: Good.
8     MR. SAHELIAN: Thank you, Your Honor.
9     (Proceedings concluded at 11:36 a.m.)
10
11
12                      CERTIFICATE
13 I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
14 TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN
15 THE ABOVE MATTER.
16 FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE
17 REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE
18 REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
19
20 /s/ Miriam V. Baird               01/17/2020
21 MIRIAM V. BAIRD                           DATE
   OFFICIAL REPORTER
22
23
24
25