**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ADAM GHADIRI,<br><br>            Plaintiff-Appellant,<br><br>  v.<br><br>CARPET AND LINOLEUM CITY, a business entity; et al.,<br><br>            Defendants-Appellees,<br><br> and<br><br>JACQUELINE COX,<br><br>            Defendant. | No.   19-56345<br><br>D.C. No.<br>8:18-cv-01869-AG-ADS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Submitted October 13, 2020[**]
Pasadena, California

Before: GOULD and OWENS, Circuit Judges, and KORMAN,[***] District Judge.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Appellant Adam Ghadiri is a frequent filer of Americans with Disabilities Act ("ADA") cases. A review of cases on PACER indicates that Ghadiri has filed over 100 lawsuits in the Central District of California since 2018, which commonly allege that small businesses in the region fail to designate handicapped parking or provide handicapped bathrooms. Ghadiri often brings lawsuits for injunctive relief and the $4,000 statutory minimum damages under California law. Ghadiri frequently files his complaints in *pro per*, using the same template that he used in this action. In a handful of cases, Ghadiri is represented by counsel, including his attorneys in this case. *See, e.g.*, *Ghadiri v. Rainbow 1, LLC,* No. 8:19-cv-00713 (C.D. Cal.). Ghadiri's lawsuits often settle. Indeed, because it appears that Ghadiri is willing to settle for $4,000, it may not pay for a defendant to retain counsel and litigate the case at the additional risk of paying Ghadiri's counsel fees should he prevail.

Appellees own a modest retail carpeting store. In a six-page *pro per* complaint, Ghadiri alleged that Appellees' business failed to designate any space for handicapped parking. He sought an injunction requiring Appellees to correct the defect in their parking lot, as well as at least $4,000 in statutory damages available under California law. Ghadiri subsequently substituted Center for Disability Access ("CDA") to represent him in the lawsuit. Before Ghadiri retained CDA, virtually no

---

[***] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

activity had taken place in the case, so that the case file consisted mostly of a six-page complaint and a ten-page answer.  In the four months that Ghadiri was represented by CDA, only one motion was filed—Ghadiri's summary judgment motion, for which CDA did not even file a reply.  Discovery in the case was also modest.  The only deposition taken in the case was Appellees' deposition of Ghadiri.  As CDA itself noted in its motion for attorney's fees before the District Court, this "case has not seen a tremendous amount of work."

Nevertheless, despite the minimal amount of work required, CDA billed 75.8 hours and moved for an award of $34,873.50 in attorney's fees after prevailing on summary judgment.  The District Court awarded CDA $15,000 in attorney's fees.  The District Court based its fee award on a "global view of reasonableness," after finding that CDA's hourly rates and the hours it billed in the case to be unreasonable.

We review the District Court's award of attorney's fees for abuse of discretion, but review questions of law that underlie a court's fee award de novo. *Vogel v. Harbor Plaza Ctr.*, 893 F.3d 1152, 1157 (9th Cir. 2018).  "Under this standard of review, we affirm unless the district court applied the wrong legal standard or its findings were illogical, implausible or without support in the record." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201–02 (9th Cir. 2013) (internal quotations and citations omitted).  We may permit a fee award to stand if we conclude that any error on the part of the District Court in calculating the fee was

harmless. *See Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991).

We hold that the District Court's fee award was not an abuse of discretion given the circumstances of this case. As the Supreme Court recognized in *Fox v. Vice*, 563 U.S. 826, 838 (2011):

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

That is what the District Court did here. Even though the District Court did not use explicit mathematical calculations to determine the fee award, he said that he was "reduc[ing] the amount of fees requested to reflect a more reasonable rate," and cited cases in which CDA had requested a maximum fee rate of $425 an hour as recently as a year before its fees motion in this action. *See Lopez v. Macca Corp.*, 2018 WL 5310770, at *6 (C.D. Cal. Oct. 22, 2018). CDA argues that a $425 hourly rate, which was based on a rate that it had first requested 2011, was unreasonable. Nevertheless, even if the District Court had accepted the hours CDA billed as reasonable, the $460 an hour blended rate one arrives at by dividing the total number of fees requested ($34,873.50) by the total number of hours billed (75.8) is greater than the maximum fee rate CDA requested only a year earlier.

The District Court's criticism of the hours CDA expended on this case also indicates that it clearly thought that many of the hours billed were excessive in terms

4

of the work performed. For example, the District Court criticized CDA for charging $2,000 to review the case file, which consisted of a six-page complaint and ten-page answer. Nevertheless, a cursory review of the time sheets CDA submitted to the District Court demonstrates that CDA spent approximately 32 hours on the following activities, which captures the essential tasks that CDA represented it performed: (1) reviewing the case file, (2) tasks related to summary judgment, (3) tasks related to Plaintiff's deposition, (4) tasks related to Defendant's anticipated appeal of the District Court's summary judgement order, which was voluntarily dismissed before Defendants even filed an appeal brief. Applying the $460 blended rate to time spent on these activities yields a total of $14,720, which is only $280 less than the District Court's fee award.

In sum, the District Court had great familiarity with cases alleging violations of the ADA and its California state law equivalent. Indeed, at the fee hearing, the District Court mentioned that "[ADA] cases have come to take up . . . maybe 20 percent or more of the calendars of District Court judges across the Central District." Under these circumstances, the District Court's "assessment" of the reasonableness of time spent on activities like case analysis, motion drafting, and discovery-related tasks is "entitled to considerable deference because of the district court's superior understanding of the litigation." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (internal quotations and citation omitted). We cannot say that the

District Court's fee award was based on findings that were "illogical, implausible or without support in the record." *Gonzalez*, 729 F.3d at 1201–02.

**AFFIRMED.**